IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MANCHESTER TEXAS FINANCIAL GROUP and MANCHESTER AUSTIN, LLC *d/b/a* MANCHESTER AUSTIN HOTEL, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:19-CV-630-RP |
| ACE AMERICAN INSURANCE COMPANY, | § § § § | |
| Defendant, | § § | |
| v. | § § | |
| HUNT CONSTRUCTION GROUP, INC., | § § | |
| Intervenor-Plaintiff. | § § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant ACE American Company's Motion to Dismiss Hunt Construction Group, Inc.'s Intervening Complaint or Alternatively for Transfer of Venue, Dkt. 73, and all related briefing. Dkts. 74, 76. Having considered the parties' briefs, the record, and the relevant law, the undersigned issues the following report and recommendation.

1

## I. BACKGROUND

This lawsuit concerns certain losses incurred during the construction of the Fairmont Austin, a luxury hotel in Austin, Texas. Dkt. 1-28, at 3. In 2014, Plaintiff Manchester Texas Financial Group, LLC (together with Manchester Austin, LLC d/b/a Manchester Austin Hotel LLC, "Manchester") entered into a contract ("Project Contract") with Hunt, which would serve as the general contractor to build the Fairmont Austin. *Id.*; Dkt. 47-1, at 11-66. As part of the Project Contract, Manchester was required to purchase a Builder's Risk Policy ("BR Policy") to insure against "physical loss or damage," including "resultant damage from defective workmanship or design," and to cover "[Hunt]'s services and expenses required as a result of" insured losses, and "include the interests of the Owner, the Contractor, Subcontractors and subsubcontractors in the Project." Dkt. 47-1, at 58. The Project Contract also included a waiver of subrogation, whereby the parties waived any rights against each other "for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3." *Id.* The BR Policy was effective between November 5, 2014, until December 31, 2017, and included Hunt as an additional insured. *Id.* at 5-6; Dkt. 1-3, at 29-79; *see id.* at 34 (listing Hunt as "Additional Named Insured").

As the BR Policy neared expiration and the Project was not complete, Manchester entered into a Corporate Risk Domestic Property Policy ("CR Policy"), which was narrower and included more exclusions than the BR Policy, and according to Manchester, did not satisfy their contractual obligations to Hunt under

2

the Project Contract. Dkt. 1-3, at 81-207; Dkt. 1-3, at 7. The CR Policy was effective from January 1, 2018, through January 1, 2019, and did not include Hunt as a named insured. *Id.* The CR Policy also included a forum selection clause calling for any "dispute arising" from the policy to be "exclusively subject to the jurisdiction of the U.S. District for the Eastern District of Pennsylvania." Dkt. 47-1, at 205.

During the term of the BR Policy, Manchester sustained four losses for which it made claims and ACE paid in part. Dkt. 1-28, at 5-6. Manchester alleges that ACE "failed and refused to cover in full" coverage for claims that were "clearly covered" by the BR Policy. *Id.* at 8. Manchester also sustained losses during the term of the CR Policy, and although Manchester did not sue ACE under this policy, Hunt now seeks a declaration that such losses are in fact covered by the CR Policy. Dkt. 47, at 5-8.

Manchester initiated this case against ACE, alleging that ACE's failure to fully cover its claims under the BR Policy violated the Texas Insurance Code, the Texas Deceptive Trade Practice Act, and constituted a breach of the insurance contract and of the duty of good faith and fair dealing between the parties. *Id.* at 8-16. Manchester also initiated an arbitration action[1] against Hunt seeking "losses which are also the subject" of this case. Dkt. 38, at 1; Dkt. 47, at 2. Manchester and ACE requested a stay of this case pending the outcome of the arbitration between Manchester and Hunt, Dkt. 38, which the Court granted, Dkt. 39.

---

[1] *See* American Arbitration Association Construction Industry Arbitration Tribunal No. 011900010301.

Hunt then moved to intervene as a plaintiff in this case, seeking a declaration that Manchester's damages are covered under both the BR Policy and the CR Policy and to bring a breach of contract claim against ACE. Dkt. 40. The Court ultimately granted Hunt's motion to intervene. Dkt. 46, 67. ACE now moves to dismiss Hunt's intervenor-complaint based on the forum selection clause in the CR Policy, and alternatively, argues that Hunt lacks standing to bring its claims and failed to properly plead its compliance with the conditions precedent in either of the policies. Dkt. 73.

## II.  DISCUSSION

### A.  Forum Selection Clause

ACE first moves to dismiss, or alternatively, transfer Hunt's claims against it brought under the CR Policy to the U.S. District Court for the Eastern District of Pennsylvania based on the forum selection clause in the CR Policy. Dkt. 73, at 6-11; Dkt. 47-1, at 120. The CR Policy contains a forum selection clause specifying that any "dispute arising" from the policy will be "exclusively subject to the jurisdiction of the U.S. District for the Eastern District of Pennsylvania." Dkt. 47-1, at 205. ACE argues that such a clause mandates dismissal of these claims, or transfer to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a). Dkt. 73, at 6-11. Hunt responds that because the forum selection clause does not specifically address venue, transfer or dismissal is not warranted, and in any event, Hunt may void the clause under Texas law. Dkt. 74, at 2-6[2] (citing Tex. Bus. & Com. Code § 272.001).

---

[2] Hunt also attempts to argue that ACE consented this Court's jurisdiction over the CR Policy claims by removing this case to federal court without challenging personal

4

Initially, the undersigned notes that because this Court has diversity jurisdiction over this lawsuit, it "must apply the choice of law rules of the forum state, here Texas." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). Under Texas law, a forum selection clause using mandatory language providing, as here, that a court "will" have "exclusive" jurisdiction over a controversy is considered mandatory and requires that litigation arising from the contract be carried out in a given forum. Dkt. 47-1, at 205; *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016); *In re Agresti*, No. 13-14-00126-CV, 2014 WL 3408691, at *5, *7 (Tex. App.—Corpus Christi 2014, no pet.) (clause found mandatory where it "expressly exclude[d] the application of other law through the term 'exclusively'"); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 792 (Tex. 2005) (finding forum selection clause mandatory where parties consented to "exclusive jurisdiction" in chosen forum).[3] Having determined that the forum selection clause

---

jurisdiction, Dkt. 74, at 4-5, yet the CR claims were not a part of this lawsuit by the time ACE removed it to federal court. *See* Dkt. 1-28. Hunt cites *Andra Grp., LP v. BareWeb, Inc.*, No. 4:17-CV-00815, 2018 WL 2848985, at *11 (E.D. Tex. June 11, 2018), for the proposition that pendent venue exists over the CR Policy claims because they arise from the "a common nucleus of operative facts" as the claims arising from the BR Policy, yet the court in *Andra* found pendent venue over claims related to those brought in that forum pursuant to a valid forum selection clause and did not address the issue of waiver. The undersigned thus rejects Hunt's unsupported contention that ACE's consent to venue in this forum as to the BR Policy claims applies to the CR Policy claims. Dkt. 74, at 7-8.

[3] The result is the same under Pennsylvania law. *See Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 217 (3d Cir. 2015) (describing the following as a mandatory forum-selection clause: "[t]he courts of the State of Delaware shall have exclusive jurisdiction over any action, suit or proceeding with respect to this Subscription Agreement...."); *New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 546, 550 (3d Cir. 2011) (holding that a "forum selection clause that provides: 'exclusive jurisdiction ... shall lie in the appropriate courts of the State [of] New Jersey" … "memorializes the parties' intention to litigate all contractual disputes in the state courts of New Jersey and thus was a waiver of the right to removal"); *IDT Corp. v. Clariti Carrier Servs., Ltd.*, 2001 PA Super 114, ¶ 5, 772 A.2d 1019, 1021 (Pa. App. 2001) (holding that contractual agreement to "submit to the

5

in the CR Policy is mandatory in nature, the undersigned must next decide whether it is enforceable.

Hunt does not appear to contest the enforceability of the forum selection clause in the CR Policy, but rather argues that it is "voidable at the option of Hunt" under Texas law. Dkt. 74, at 6. Under Texas's Business and Commerce Code, a party obligated to perform construction work under a contract "affecting [a] construction contract" may void a clause requiring litigation regarding the contract to be litigated in another state's courts. Tex. Bus. & Com. Code § 272.001(b) (West 2017). ACE first argues that since the CR Policy is "an insurance contract, not a construction contract," Section 272 of the Texas Business and Commerce Code does not apply here. Dkt. 76, at 6. The undersigned agrees. Hunt argues that the CR Policy was procured, at least in part, due to Manchester's obligation to maintain property insurance throughout the construction of the Fairmont hotel, and Hunt should be considered a "party obligated by the contract to perform the construction" since the CR Policy was procured to satisfy the requirements of the construction contract between Hunt and Manchester, yet such a reading strains the interpretation of the Texas law, and Hunt has cited no case to support such a position. Dkt. 74, at 5-6; Dkt. 47-1, at 58.

As ACE points out, the CR Policy is not a "construction contract concerning real property located in" Texas, as required by Section 272.001(a). Tex. Bus. & Com. Code § 272.001(a)-(b). Even considering the CR Policy to be a "an agreement

---

exclusive jurisdiction of the English courts" was a mandatory forum-selection clause that required the parties "to resolve matters in the courts of England").

collateral to or affecting a construction contract" as stated in Section 272.001(b), it was the Project Contract, not the CR Policy, that required Hunt to perform the construction policy, but rather the construction agreement executed between Manchester and Hunt that required Hunt to perform the construction project. Dkt. 47-1, at 11-66; Dkt. 1-3, at 81-207; Tex. Bus. & Com. Code § 272.001(b) (forum selection clause "voidable by the party obligated by the contract to perform the construction or repair"). Because the CR Policy did not obligate Hunt to perform the Project Contract, the undersigned finds that Section 272 does not apply to the CR Policy.

Because Hunt has not argued that the CR Policy is otherwise unenforceable, and courts in this circuit "appl[y] a strong presumption in favor of the enforcement of mandatory [forum selection clause]s," the undersigned finds that the forum selection clause in the CR Policy is enforceable. *See* Dkt. 74; *Weber*, 811 F.3d 758, 773; *see also Rite Aid Headquarters Corp. v. Crayton Landscaping & Bldg. Maint., Inc.*, No. CIV.A. 12-05775, 2013 WL 3993728, at *4 (E.D. Pa. Aug. 6, 2013). Though generally "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests," the Fifth Circuit has indicated that the "analysis differs when there are parties who have not entered into any forum-selection contract." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013); *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014) ("In terms of the party who signed the agreement, *Atlantic Marine* is clear—the court cannot consider private-interest

7

factors that counsel against transfer to the agreed-upon forum. But the analysis differs when there are parties who have not entered into any forum-selection contract.").

Because Hunt was not a party to the CR Policy, and ACE seeks to have Hunt's CR Policy claims severed and transferred, the undersigned must apply the "the severance-and-transfer inquiry" elucidated by the Fifth Circuit in *Rolls Royce*. 775 F.3d at 679. While the court in *Rolls Royce* determined that the private interest factors of the parties who signed the forum selection clause must favor severance and transfer, it dictated that "the district court must consider the private factors of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis." *Id.* at 681. As such, the undersigned will assess Hunt's private interests in maintaining its CR Policy claims in this lawsuit.

Under *Rolls Royce*, the undersigned first "must consider the private factors[4] of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis." *Id.* Hunt argues that its private interests "overwhelmingly" weigh against transfer because of the delay, cost, and inconvenience of litigating its claims under the BR and CR Policies in separate forums, the greater ease of access to evidence in this Western District of Texas, and the potential for inconsistent findings should the claims be litigated

---

[4] The private interest factors include (1) the availability of compulsory process to secure the attendance of witnesses; (2) the cost of attendance for willing witnesses; (3) the relative ease of access to sources of proof; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

8

separately. Dkt. 74, at 11. Hunt also insists that its choice of venue should be afforded deference. *Id*. ACE declined to acknowledge the applicability of *Rolls Royce* to this case, and merely states in its reply that Hunt's interests should not "override a contractually-binding forum selection clause." Dkt. 76, at 8-9 ("Hunt never explains why its conclusory arguments are 'overwhelming,' or render this case so 'unusual' that the Court should override a contractually-binding forum selection clause.")

Here, Hunt's private interest in litigating their CR Policy claims along with their BR Policy claims in this forum weigh against transfer to the Eastern District of Pennsylvania. Hunt argues that its choice of forum is more convenient in terms of "access to evidence and witnesses who are geographically clustered around the Austin-based project that is currently the subject of an Austin-venued arbitration proceeding." Dkt. 74, at 11. The presence of witnesses and other sources of proof relating to the construction of the Fairmont Hotel in Austin tips the private interest factors against transfer, especially given that the Pennsylvania court is over 100 miles from Austin and, as such, would be unable to secure compulsory process against non-party witnesses. *See* Fed. R. Civ. P. 45(c)(1)(A) (holding that a subpoena may command a person to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person"); *see also Garcia v. Cornerstone Indus. Corp.*, No. EP-19-CV-382-PRM, 2020 WL 10313917, at *5 (W.D. Tex. Apr. 29, 2020) ("'[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more

9

than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled'" (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004))).

The undersigned further finds that the public interest factors also weigh against transfer. In assessing the public interest factors,[5] the undersigned "must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit." *Rolls Royce*, 775 F.3d at 681 ("While judicial economy is not the sole consideration for a district court facing a severance-and-transfer motion, it retains a cardinal role."). As Hunt points out, "this dispute is about the allocation of risks arising from a construction project in Texas," and as such, "Texas has a strong public policy interest" in resolving the claims in this lawsuit, whether they arise from the BR Policy or the CR Policy. Dkt. 74, at 12; *Innovative Glob. Sys. LLC v. Onstar, LLC*, No. 6:10-CV-574, 2012 WL 12930885, at *8 (E.D. Tex. Feb. 14, 2012) ("if there are significant connections between particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor" (citing *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009))).

Although ACE makes much of the fact that Hunt's complaint "commingles [the] insurance claims [arising from the BR Policy] with entirely separate and distinct insurance claims allegedly covered by the [CR] policy," Dkt. 73, at 2, the

---

[5] Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Rolls Royce.*, 775 F.3d at 684 (cleaned up).

claims arising under either policy relate to the same construction project for which Hunt served as a general contractor. *See* Dkt. 1-28, at 3; Dkt. 47-1, at 11-66. Moreover, because Manchester seeks compensation from Hunt in the pending Austin-based arbitration for losses Hunt claims are covered by the BR and CR policies, the resolution of coverage disputes in separate forums could cause delay and potential inconsistency in the applicability of these coverage decisions in the pending arbitration. Dkt. 47, at 5-6; *see Rolls Royce*, 775 F.3d at 679 ("the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause.")

Having performed an "individualized," case-specific consideration of the convenience and fairness of ACE's request to dismiss or transfer the CR Policy claims, the undersigned finds this to be one of those "most unusual cases" where a valid, enforceable forum selection clause should not be enforced as against non-signatory Hunt. *Rolls Royce*, 775 F.3d at 678; *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *Atl. Marine*, 571 U.S. at 66). As such, the undersigned will recommend that the District Court deny ACE's motion to dismiss or transfer Hunt's claims arising under the CR Policy based on the forum selection clause contained in the CR Policy.

**B.   Standing**

ACE next move to dismiss Hunt's claims for lack of standing, arguing that Hunt cannot sue ACE to enforce the CR Policy because it is not a party to the agreement, and was not an intended third-party beneficiary to the policy. Dkt. 73,

11

at 12-14; Dkt. 76, at 9-11. Hunt incorrectly argues that this Court has already determined that it has standing to pursue its CR Policy claims, and further posits that the cases ACE cites in support of dismissal for lack of standing all dealt with prudential, rather than Article III, standing. Dkt. 74, at 12-15. Hunt argues that even in the absence of standing, "the circumstances are so compelling that recognition of the beneficiary's (Hunt) right is appropriate to effectuate the intention of the parties." Dkt. 74, at 15.

While generally only parties to a contract have standing to enforce the rights provided in the four corners of an agreement, a person who is not a party to a contract may nevertheless have standing to enforce the contract if it was made for that person's benefit. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 602 (5th Cir. 2000); *Nguien v. Pennsylvania Dep't of Corr.*, No. 3:18-CV-0209, 2021 WL 3563373, at *10 (W.D. Pa. Aug. 12, 2021) ("In Pennsylvania, third-party beneficiary law is summarized as follows: a party becomes a third-party beneficiary only where both contracting parties have expressed an intention to benefit the party in the contract itself.").

To demonstrate that a contract was made for its benefit, the third party must demonstrate that (1) it was not privy to the written agreement; (2) the contract was actually made for its benefit; and (3) the contracting parties intended for it to benefit by their agreement. *See Talman Home Fed. Sav. & Loan Ass'n of Ill. v. Am. Bankers Ins.,* 924 F.2d 1347, 1350-51 (5th Cir. 1991); *Wawrzynek v. Statprobe, Inc.*, 422 F. Supp. 2d 474, 481 (E.D. Pa. 2005). There is a presumption against

conferring third-party-beneficiary status on non-contracting parties, and a nonparty to a contract bears the burden of demonstrating its status as a third-party beneficiary. *Mo. Pac. R.R. Co. v. Harbison-Fischer Mfg. Co.*, 26 F.3d 531, 540 (5th Cir. 1994); *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) ("All doubts must be resolved against conferring third-party beneficiary status.").

Here, Hunt has failed to carry its burden of demonstrating that it was a third-party beneficiary to the CR Policy, as the policy "contains no language that remotely suggests that" Hunt was an intended third-party beneficiary to the CR Policy. *Baldwin v. Mortg. Elec. Registration Sys., Inc.*, No. 4:19-CV-03921, 2020 WL 4227591, at *3 (S.D. Tex. June 8, 2020), *report and recommendation adopted*, No. 4:19-CV-03921, 2020 WL 4227468 (S.D. Tex. July 23, 2020). Hunt alleged that Manchester entered the CR Policy with ACE to fulfill its obligation to maintain a builder's risk policy throughout the duration of the construction of the Fairmont. Dkt. 47, at 4. While Hunt was certainly not privy to the CR Policy, the policy did not name Hunt as an additional insured. *See* Dkt. 1-3, at 81-207. Hunt nevertheless insists that "it was considered an additional insured for its losses associated with covered events." Dkt. 47, at 4. However, nothing in the CR Policy evinces an intention to confer third-party beneficiary status on Hunt. *See* Dkt. 1-3, at 81-207; *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *Palma v. Verex Assur., Inc.*, 79 F.3d 1453, 1457 (5th Cir. 1996) ("Whether the contract was made for her benefit is derived solely from the language of the contract."); *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 757 (Tex. App.—Fort

13

Worth 2012, pet. denied) ("a third-party beneficiary will not be recognized unless the intent to make him or her so is clearly written or evidenced in the contract"); *Guy v. Liederbach*, 459 A.2d 744, 750 (Pa. 1983) ("Under current Pennsylvania law for a third party beneficiary to have standing to recover on a contract, both parties (promisor and promisee) must express an intention that the third party be a beneficiary to whom the promisor's obligation runs in the contract itself.").[6]

In fact, as ACE points out, the CR Policy explicitly stated that it was "issued for the benefit of the Named Insured. No other person or Entity shall have any rights or benefits under this Policy unless specifically provided herein, nor shall any such person or Entity have the right to enforce any Policy provisions." Dkt. 1-3, at 167-68; *ART Midwest, Inc. v. Clapper*, No. 3:99-CV-2355-N, 2009 WL 10646744, at *5 (N.D. Tex. Sept. 22, 2009), *aff'd sub nom. Art Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206 (5th Cir. 2014) ("parties to a contract may include a provision

---

[6] Pennsylvania law, unlike Texas law, allows for the recognition of third-party beneficiaries not explicitly named in the contract under Section 302 of the Restatement (Second) of Contracts where (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Shumate v. Twin Tier Hosp., LLC*, 655 F. Supp. 2d 521, 535 (M.D. Pa. 2009); *see also Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 527 (E.D. Pa. 2011) (Pennsylvania courts require that the circumstances surrounding the contract be "compelling" before finding that recognizing a third-party beneficiary is appropriate to effectuate the intention of the parties.). Here, however, Hunt has not alleged that ACE entered into the CR Policy with the intention of conferring any rights on Hunt and has not argued that compelling circumstances surrounding the formation of the CR Policy warrant the recognition of Hunt as a third-party beneficiary here. *See* Dkt. 47. In any event, "[e]ven under Section 302's implied intent exception, the circumstances underlying the contract give rise to intended beneficiary status only if the parties have not "otherwise agreed." *Medevac*, 817 F. Supp. 2d at 528.

explicitly precluding third-party beneficiary claims, which will defeat third-party claims that might otherwise have been allowed"); *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 200 (S.D. Tex. 2008) (finding the unambiguous language of a contractual provision disclaiming third-party liability indicated the parties' specific intent to eliminate third-party beneficiary claims); *see also Medevac*, 817 F. Supp. 2d at 528.

Because Manchester and ACE did not "clearly and fully spell out their intention" to include Hunt as a third-party beneficiary to the CR Policy, the undersigned must recommend that the District Court grant ACE's motion to dismiss Hunt's CR Policy claims for lack of standing. *MCI Telecomms. Corp.*, 995 S.W.2d at 651; *see also Debes v. Gen. Star Indem. Co.*, No. 09-12-00527-CV, 2014 WL 3384679, at *4 (Tex. App.—Beaumont July 10, 2014, no pet.) ("The fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary."). The undersigned further recommends that the dismissal be without prejudice. *Sepulvado v. La. Bd. of Pardons & Parole*, 114 F. App'x 620, 622 (5th Cir. 2004) ("Dismissal for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1), is without prejudice.").

### C. Conditions Precedent

Having recommended dismissal of Hunt's claims brought under the CR Policy, the undersigned will next address ACE's arguments relating to Hunt's claims brought under the BR Policy. Dkt. 73, at 14-18. ACE argues that Hunt's

15

claims for recovery under the BR Policy must be dismissed because Hunt failed to allege that it has satisfied the conditions precedent contained in the BR policy. *Id.* Hunt responds that its failure to specifically plead its compliance with the conditions precedent of the BR Policy does not merit dismissal of these claims. Dkt. 74, at 15-16.

While the BR Policy does require the insured to report and provide a proof of loss as a condition precedent to filing suit, under Texas law an insurer is not relieved of liability by the "mere failure of the insured to comply with such conditions" and must show "prejudice" should it wish to escape liability based on plaintiff's failure to comply with conditions precedent in an insurance policy. Dkt. 47-1, at 87-88; *Clarke v. Allianz Glob. Risks U.S. Ins. Co.*, 639 F. Supp. 2d 751, 756 (N.D. Tex. 2009) ("an insurer seeking to escape liability must establish that the failure to comply with the condition caused it to be 'prejudiced'").

Indeed, the Texas Supreme Court has adopted a broad notice-prejudice standard when considering whether an insurance policy's proof of loss provision has been violated. *Rogers v. Allstate Vehicle & Prop. Ins. Co.*, No. 3:17-CV-0455-M, 2017 WL 3215292, at *3 (N.D. Tex. July 28, 2017) (citing *PAJ, Inc. v. Hanover Ins.*, 243 S.W.3d 630, 635 (Tex. 2008)). This notice-prejudice standard requires an insurer to show that it was prejudiced by an insured's failure to comply with the policy, regardless of whether the term at issue is a covenant, condition precedent, exclusion, or other provision. *Id.* To show prejudice, an insurer must prove that one of the recognized purposes of the provision has been

16

adversely impacted. *Blanton v. Vesta Lloyds Ins.*, 185 S.W.3d 607, 615 (Tex. App.—Dallas 2006, no pet.).

The purpose of requiring an insured to submit a signed and sworn proof of loss prior to filing suit is to allow the insurer "to properly investigate the circumstances of the loss while the occurrence is fresh in the minds of witnesses, to prevent fraud, and to enable it to form an intelligent estimate of its rights and liabilities so that it may adequately prepare to defend any claim that may arise." *Hanover Ins. of N.Y. v. Hagler*, 532 S.W.2d 136, 138 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.). An insurer must be able to provide "more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim." *Hamilton Props. v. Am. Ins. Co.*, No. 3:12-CV-5046-B, 2014 WL 3055801, at *9 (N.D. Tex. July 7, 2014) (internal quotations omitted).

Here, ACE does not contend that it has suffered any prejudice as a result of Hunt's failure to comply with the conditions precedent of the BR Policy. See Dkt. 73, at 14-18; Dkt. 76, at 11. Moreover, given that Manchester initiated this lawsuit based on the same losses Hunt now also claims are covered by the BR Policy, it is hard to imagine how ACE could claim it lacked notice that Hunt might seek the same declaratory relief Manchester seeks regarding the BR Policy. See Dkt. 1-28, at 8-17. Because ACE did not argue that it suffered any prejudice resulting from Hunt's failure to plead its compliance with the conditions precedent in the BR Policy, the undersigned will recommend that the District Court deny ACE's motion to dismiss Hunt's BR Policy claims on this basis.

### III. CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** ACE's motion to dismiss, Dkt. 73. Specifically, Hunt's claims brought under the CR Policy should be dismissed without prejudice for lack of standing. undersigned recommends that the District Court deny ACE's motion to dismiss as to all other claims.

**IT IS FURTHER ORDERED** that this case is **REMOVED** from the docket of the undersigned and **RETURNED** to the docket of the Honorable Robert Pitman.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 21, 2021.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE